## BARBO *v.* JERU.[1]

1. Wills—Construction—Respective Shares of Devisees and Legatees.

Testator owned a 40-acre tract, and also part of a lot in the same section. His buildings were located upon the lot, though he supposed them to be upon the 40-acre tract, and he was apparently without knowledge that he owned such part of the lot. He gave to his daughter a one-third interest in the buildings, and also the 11⅓ acres upon which he supposed the buildings were situated. To a son he gave a one-third interest in the buildings, 1 acre near the buildings, and 13⅓ acres. To another son he gave a one-third interest in the buildings, 1 acre near them, and the 13⅓ acres between the land given to his daughter and that given to the other son. *Held*, that the devise to the sons of an acre each near the buildings, and the bequest of an undivided one-third interest in the buildings to each, manifested testator's intent that the buildings should be a home for his daughter, and that the sons should have therein such an interest as would permit them also to make a home there, and that there should be no division of the buildings nor of their value.

2. Same — Construction — Designation of Shares of Devisees and Legatees.

It appearing that it was the intention of testator that his daughter should take the land on which the buildings were situated, the will is construed so as to give to her that part of lot 4 on which they stand.

---

[1] Headnotes prepared by Ostrander, J.
155 Mich.—23.

3. HOMESTEAD—PROPERTY CONSTITUTING—SEPARATE TRACTS.

A devise to one in severalty of land upon which buildings are situated and to another of a one-third interest in the buildings will not support a claim of a homestead right in the land or buildings by the latter.

4. EXECUTION — LEVY — POSSESSION NOTICE OF RIGHT UNDER AN UNRECORDED DEED.

A judgment creditor levied upon and sold the interest of the judgment debtor in two parcels of land. Later, he took out another execution and levied it upon the same lands. When the first execution was levied, the person in possession of the premises held a conveyance of the interest of the judgment debtor in the lands to herself. Said deed having been set aside at the suit of the judgment creditor because the conveyance was in fraud of her rights, and the levy and sale on execution having been held ineffective because of the vendee's possession of the premises, the second execution is held to be a lien upon the premises for the amount of the judgment undiminished by the sums bid at the execution sale.

Appeal from Menominee; Stone, J. Submitted November 9, 1908. (Docket No. 108.) Decided February 2, 1909.

Bill in aid of execution by Mary Barbo against Frank Jeru, Joseph Jeru, George Jeru, and Agnes Jeru. Defendants Agnes and Frank Jeru filed an answer in the nature of a cross-bill making Alva L. Sawyer a party defendant, to correct an error in a deed, and to set aside the execution, levy, and sale. From a decree for complainant, defendants appeal. Modified and affirmed.

*A. L. Sawyer*, for complainant.

*Cummiskey & Spencer*, for defendants.

Complainant is a judgment creditor of defendant Frank Jeru, the judgment having been recovered May 11, 1906. She levied an execution issued upon the judgment upon all the interest of said defendant in the northeast quarter of the southwest quarter, and lot 4 in section 23, in town 35 north, of range 25 west, and a sale under the execution

was made October 23, 1906, the first-described parcel being sold for $350 and the second for $650. A certificate of sale was issued. The execution was returned unsatisfied to the amount of upwards of $600. March 27, 1907, another execution was issued upon the said judgment, and was on that date levied upon all the remaining interest, legal and equitable, of the said defendant in and to the same lands. One Nicholas Jeru was in his lifetime owner of the said northeast quarter of the southwest quarter. It appears, also, that he was owner of the west 463 feet of lot 4, in the same section. Title to the land on lot 4 was acquired by occupancy. The buildings constituting the home of the said Nicholas Jeru were erected upon lot 4. They consisted of a large house used as a home, hotel, and saloon, with outbuildings. There are no buildings on the 40 acres. All parties agree that he supposed that the buildings were located on the northeast quarter of the southwest quarter. He died testate, and apparently without knowledge that he owned by occupancy or otherwise any land on lot 4. The will probated was the second one made by Nicholas Jeru. From statements made by Nicholas it appears that in and by the first will he gave the house with its furnishings to his daughter. In the will which was probated he gave his daughter a one-third interest "in all the buildings on the northeast quarter of the southwest quarter of section twenty-three," also "eleven and one-third acres of said forty-acre tract." The following is taken from the will:

"The northeast quarter of the southwest quarter section twenty-three (23) * * *, to be divided into three equal tracts of land, each containing 13⅓ acres, this forty acres to be divided from east to west. The eleven and one-third (11⅓) acres I bequeathed to my daughter being the one what the buildings are upon. To my son, Frank Jeru, I give, devise and bequeath one-third interest in all of the buildings on the northeast quarter of the southwest quarter of section twenty-three (23) * * *; one acre of land near the aforesaid buildings being in the first thirteen and one-third (13⅓) acres or the one that aforesaid build-

ings are upon. Also to my son Frank thirteen and one-third (13⅓) acres * * * being the tract along the south line of said forty. To my son, Joseph Jeru, I give, devise and bequeath one-third interest in all the buildings on the northeast quarter of the southwest quarter of section twenty-three (23) * * *, one acre of land near the aforesaid buildings being in the first thirteen and one-third (13⅓) acres, or the one that aforesaid buildings are upon. Also to my son, Joseph Jeru, the remaining thirteen and one-third (13⅓) acres of the northeast quarter of the southwest quarter of section twenty-three (23) * * *, being the tract situated between the one bequeathed to my daughter, Agnes Jeru, and my son, Frank Jeru."

Pending the determination of the suit in which the aforesaid judgment was rendered, and under date April 10, 1906, Frank Jeru, who is unmarried but who had children, and at and before that time was living upon the premises, made a warranty deed, conveying to his sister, for a stated consideration of $300, "an undivided one-third interest in the northeast quarter of the southwest quarter of said section 23," with the recital, "the above premises being the same one-third interest in the same property as bequeathed to me by the will of my father, Nicholas Jeru, reference to which said deed as so recorded for greater particularity is hereby had."

When the deed was made, both Agnes and Frank understood that by the will the buildings were given to Agnes. It is charged in the bill that Frank Jeru had no homestead interest in the property; that the conveyance to his sister was without adequate consideration, and made with the purpose on the part of Frank and his sister to defraud the creditors of Frank. The prayer of the bill is that the deed may be held to be void as against complainant, and be set aside and canceled; that a decree may be entered establishing the respective interests of the parties in the land; and that complainant may have such other and further relief as circumstances may require. Frank, George, Joseph, and Agnes Jeru are made parties to the bill. Agnes Jeru lived at home with her parents,

and after the death of her mother took charge of the house, kept boarders, and cared for her father. Frank paid board to her for himself and his children. Joseph was married and lived elsewhere. George, his wife, and children lived with his father and sister at the time his father died. He was otherwise provided for in the will. They filed a joint and several answer, admitting the judgment, the levy and sale upon execution, the issuing and levying of the second execution. They admit that Nicholas Jeru was owner of all the land which has been described, and state that his title to the west 463 feet of lot 4 was acquired by actual, visible, notorious, and hostile possession for a period of more than 15 years, and that he had no title of record. They admit it was the intention of Nicholas Jeru to include in his disposition of his property the part of lot 4 which has been described; admit the execution and delivery of the deed by Frank to Agnès; say that Frank had at the time a homestead interest in the property which his father devised to him, and that it was the intention of Frank in conveying the property to his sister to convey all of the interest he had in all of the property left him by his father; that the failure to properly describe the property arose from a mistake of fact. Defendant Agnes Jeru alleges that at the time of making the deed by Frank, and at all times since, she was and has been in open, actual, visible possession of the premises, including lot 4 and the 40-acre tract. It is denied that the conveyance by Frank to Agnes was made to defraud creditors or to defraud complainant. It is averred that the conveyance was made pursuant to an agreement between the parties entered into before the suit was begun; that upon the death of the wife of Frank Jeru in June, 1903, he committed to his sister the care of his three children; that she cared for them; that in January, 1906, in consideration of past services in the care of his children, and in consideration that said care should continue, Frank agreed to convey his interest in and to the premises, including the buildings and land, to Agnes.

It is claimed that the interest of Frank Jeru in the premises was worth less than $1,500. Agnes and Frank claim the benefit of a cross-bill, ask that the purchaser at the execution sale be made a party defendant, that the description in the deed from Frank to Agnes may be corrected, that the certificate given at the sale upon execution may be canceled, that the subsequent levy be set aside, and that they have such other and further relief as is agreeable with equity. Later on, the purchaser at the execution sale entered his appearance. It appears from a stipulation filed in the cause that no money passed at the execution sale, but that the purchaser, A. L. Sawyer, holds the certificate of sale, *first*, for himself to satisfy his services as attorney for the complainant; *second*, if there is any interest in excess of the value of such services, it is held in trust for complainant. Defendant George Jeru disclaimed any interest in the property. The decree which was entered, and from which the defendants have appealed, finds that Nicholas Jeru in his lifetime owned the 40 acres described, and also the west 463 feet of lot 4; that by his will title to the south 13⅓ acres of the 40 passed to Frank, title to the north 13⅓ acres to Agnes, and the middle 13⅓ acres to Joseph, and that all that part of lot 4 owned by Nicholas, together with the buildings, passed in equal undivided interests to Frank, Joseph, and Agnes; that Frank never acquired a homestead interest in any portion of said property. It is further found that the levies made under the first execution have no force as against the claim of Agnes derived from the deed from her brother, her possession at the time the levies were made being notice of all her rights in the land, and that the sales made to defendant Sawyer should be set aside; that the deed from Frank to Agnes should be set aside as made upon an inadequate consideration, and with knowledge on the part of both parties to the deed of the pendency of the complainant's suit at law and her position as creditor of Frank; that complainant under her second execution acquired a lien upon all of the interest of Frank in

all of said property, with the right to file this bill to test
the validity of the deed from Frank to Agnes, and that
she should be permitted to amend her second execution so
as to include therein the amount bid at the sales made
upon the first execution.    It is therefore decreed that the
sales to defendant Sawyer be canceled, that the second
execution be amended to include the whole of the original
judgment with interest, that said execution is a lien upon
the interest of Frank Jeru in all of the property, and that
it may be enforced as though originally levied for the full
amount.

OSTRANDER, J. (*after stating the facts*).   All parties
agree that the will should be construed so as to prevent
partial intestacy; that Nicholas Jeru supposed, when he
made his will, that the buildings were located on the
northeast quarter of the southwest quarter of section 23,
and that he intended to devise all of his property.   It is
contended, however, on the part of defendants, that in
legal effect the will severed the buildings from the land,
that the devises of real estate are in severalty, and that in
the buildings alone is there an undivided interest created.
This contention would seem to support the ruling that
Frank Jeru had no homestead interest in the property.

It is impossible to read the will, in the light of the tes-
tator's surroundings, without being impressed that he in-
tended that the buildings should be a home for his daugh-
ter, and that the other devisees should have in the build-
ings such an interest as would permit them, also, to make
a home there as was necessary or convenient for them-
selves and for their children.   The change made in the
terms of the first will, the care manifested in his devise to
Frank and to Joseph of an acre of land each, "near the
aforesaid buildings," the 2 acres so devised being taken
from the equal one-third of 40 acres which would other-
wise have been given to his daughter, and the bequest of
an undivided one-third interest in the buildings to each,
is evidence of this intention.   It is incredible that he in-

tended there should be a division of the buildings, or of the value of them, among the three devisees. Whatever the legal effect of what he did may be, the intention that common use should be made of the buildings seems to me to be clearly established by the will itself, in the light of surrounding circumstances. We are furnished with but one dimension of that part of lot 4 owned by the testator. Perhaps it is not material to know the other dimension, so long as we know that the buildings were located upon it. The intention of the testator cannot well be given effect unless we treat the land upon which the buildings stand as belonging to Agnes. The intention that Agnes should have the ownership and control of the land upon which the buildings are located is clear. As between herself and the other devisees, it should be treated as the controlling thing. The intention is not carried out by a construction of the will which gives to the devisees an undivided interest in the land upon which the buildings are situated. Complainant's rights, acquired by her levy, affect proper construction of the instrument not at all. We construe the will as though the strip of lot 4 upon which the buildings are located was a part of the north one-third of the 40 acres. We enlarge the holding of Agnes by the extent of the strip, give to the other devisees an acre each "near the aforesaid buildings," and leave the other provisions of the will to stand. It is clear that the judgment debtor had no homestead interest in the south 13⅓ acres of the 40 acres. For the purposes of a construction of the will, the land on lot 4 may be added to the land on the northeast quarter of the southwest quarter. But there is no connection, in fact or in law, between the interest of Frank Jeru in the south 13⅓ acres of the 40 acres and his interest in the buildings and land on lot 4. Whether, his home in fact being with his sister, the interest acquired by him in the buildings and in 1 acre of land near them may be made the foundation for a claim of homestead, is, therefore, one of the questions presented. A homestead right is an interest in land. *Michigan Mut.*

*Life Ins. Co.* v. *Cronk*, 93 Mich. 49. He can have no homestead interest in the land owned in severalty by his sister. So that, notwithstanding the evident intention of the testator, what he did will not support the right of the judgment debtor to a homestead in any part of the land. We agree with the learned trial judge in holding the deed from Frank Jeru to his sister to be void as to the complainant.

The decree of the court below will be modified so as to make it correspond with this opinion. Except as indicated, it is affirmed, but without costs to either party.

GRANT, HOOKER, MOORE, and McALVAY, JJ., concurred.